First case of the day, Vilches et al. v. Travelers. May it please the court. Good morning, your honors. My name is Jim Zuris, and I represent the plaintiff appellants, the employees in this matter, Jose Vilches, Francis Sheehan, and Jack Costiero. We would request four minutes for rebuttal at this time. That's granted. Thank you. We received the court's January 4, 2011 letter, which directed us to address certain specific matters, which were not terribly borne out in the briefing, and we will attempt to do so as best we can. I'm going to sidetrack yet again. Can I ask another question, which occurred to me, but I didn't want to send something out on the eve of argument? You've looked at the Basel case, presumably. Yes, your honor. We asked you to do that. Yes. And in Basel, the Supreme Court said that whether class action arbitration is provided and is part of the agreement of the parties is to be determined by an arbitrator, not a court. I agree with you. Now, in this case, the district court was faced with two arguments. One was that the provision for class action waiver was unconscionable. The other was that the agreements did or did not provide for class action arbitration. When we take these agreements all together, are you entitled to class action arbitration? Why, then, should we not remand? At Palaio, we said that unconscionability is threshold for the court. Why should we, then, not vacate the district court opinion, send it back for them to consider the unconscionability issue, and if the provision would, if there, not be unconscionable, send the issue of whether class action arbitration is provided for to the arbitrator? That is certainly one way to resolve the matter, and it's something that occurred to us upon reading Palaio, Basel, Stolt-Nielsen. However, we are having a hard time reconciling that conclusion with Palaio's admonition on the courts playing a substantial role in determining whether or not a class waiver is valid. Exactly, meaning an arbitrator should decide that. What we're taking from Palaio is that a court can decide that issue under certain circumstances because of the nature of a class waiver. Well, when it would go to unconscionability and, therefore, to arbitrability, the court should decide that. So that the court here, the district court, should decide, if there is a class action waiver here, would it be unconscionable such that the arbitration provision, the class action waiver, should not be enforced? That is a way to resolve it. I guess our concern would be matters of judicial efficiency and whether or not that is placing the cart before the horse because, in our view, and the way we address it with the district court, before we decide whether or not something is unconscionable, and I know the questions are related, but before we address that issue, we have to see whether or not the parties agreed to the class waiver in the first place. But if the court is only to look at arbitrability, and if the subject matter falls within the agreement of the parties, and the parties agreed to arbitrate every dispute having to do with the situation and the dispute as to whether they're entitled to a class action waiver under Basel and would seem to fall within that. Well, I mean, that's another. There's a lot of little pieces and a lot of kind of peeling of this. Do you agree that the district court did not deal with the unconscionability question? I agree, Your Honor. Okay. I guess what we would try to discuss. Was it properly raised? We believe it was, Your Honor. Admittedly, it was not our primary issue with respect to why we should be proceeding as a class action, and that we did not waive it. But we would probably address the matter with the lower court. Yes. One is to assume that's right, but why can't we just deal with the unconscionability issue, send it back, and say with respect to that now it's not unconscionable to have this be there if that's the case, then let the arbitrator decide whether the parties actually agree. From our standpoint and in the interest of judicial efficiency, that would be an adequate solution to the issue. Again, we're having a hard time reconciling all of that with Palau, and we believe it arguably backstands as an obstacle to that because if this court is adjudicating matters like unconscionability, it would seem it could also adjudicate matters such as whether or not there was a valid class waiver. The court doesn't have to, and admittedly, that's not exactly what Palau says. Except that if whether the parties agreed to arbitrate is a question for the arbitrator, then it's not a matter for a court, whether it be a district court or a appellate court. Isn't that right? Yes. And one thing I would also point out, though, one of the factors that seemed to be important in these other decisions, Stone, Nielsen, Basil, Palau, is that the agreement itself reserved for the arbitrator these questions, which to the extent that's an important factor here, it didn't. So the agreement itself does not say that the arbitrator is going to decide questions of interpretation of the arbitration policy itself, although it does give to the arbitrator the authority to decide all questions arising out of any of the other decisions. It's very broad. It is very broad. I agree. Although it doesn't specifically say that the arbitrator or the court gets to decide questions of interpretation. In your response to Judge Amber's question about whether we could sufficiently decide or satisfactorily decide the issue of unconscionability, you would not want to make a record or have additional argument on that issue before the district court. Usually such matters are decided in the first instance by the district court, but when you responded yes to Judge Amber's question that we could resolve it, I'm just wondering whether you really mean that or whether you would like the district court to have another look at it and you'd make a record and more argument on it. I think my preference would be that it be flushed out a little bit better at the district court level. I guess my response before was that this court certainly has the authority at this point to decide the question, but because the focus of the district court was not on the unconscionability question, then yes, I guess our preference would be that it be flushed out a little bit better at that level. One of your honors questions had to do with where the right to a class action in this case first arose, and I'd like to summarize our position on that. The original agreements that the employees, these adhesion contracts, if you will, signed with the employer specifically reference AAAs, the American Arbitration Association's rules, which provide for class actions at least as of October of 2003. That's one reason we believe that those original contracts were not silent. Provide for them? They allow for AAA to administer class actions. Up until that time, I think there was some confusion over whether or not an arbitration could even decide a question of a class action. But under Stolt-Nielsen, I mean the fact that something is permitted under Stolt-Nielsen, I think the Supreme Court said pretty clearly there has to be some basis for saying the parties agreed to this. Correct. How do we conclude that the parties agreed that they should have it? Because the agreements that they signed say that this will be administered in accordance with the rules of the forum at that time. The forum meaning arbitration forum. And those rules of that forum provide for class action. Permitted. They permitted, Your Honor. Yes. Could you give us a specific reference to exactly where? Because these policies changed post-Basel. Right. I'm referring to the policies as they were signed, or at least the arbitration agreement as they were signed. I know that, but I mean the AAA provision. Right. Yes. Each person has a different agreement. They're all the same language. No, I'm talking about what they say procedures of AAA. Right. Understood. But what specific citation to the AAA policies can you give me? They don't reference a specific policy. But the language is that it will be administered in accordance with the applicable rules of the applicable forum then in effect. And they reference AAA. And I'm saying to you, AAA has policies. What specific citation in AAA says class action arbitrations are permitted? My apologies, Your Honor. We do have those policies in the supplementary rules for class arbitrations that went into effect October 8, 2003. Post-Basel. Yes, Your Honor. And they say that it is up to the arbitrator to decide whether class action shall be permitted. Yes, Your Honor. Yes, absolutely. They don't say class action arbitrations are to be permitted. They say the arbitrator should decide whether the parties agree that they could proceed by a class. These changes went into effect after at least two of the main plaintiffs signed. That's true. So according to the contracts that they signed, say then in effect. So presumably it would be the rules that are in place at the time they proceed to AAA. Doesn't that merely mean that AAA has rules in effect for class action arbitrations if in fact the parties agree to class action arbitrations? It doesn't. It can't be the source of the right. It is the source of the right to ask to proceed as a class action arbitration. It's the manner in which you go about the arbitration. Judge Fischer has to be right. Judge Fischer is right. And that really just is Basel. That just reinforces the notion that an arbitrator decides this. It's an attempt to be consistent with Basel and reinforce that notion provided the parties agree to the arbitration in the first place. One question I have is if you say two of the three, this applies to, begs the question as to why we have a class action. Are the parties individually different? No. First of all, the class action doesn't necessarily mean that everybody is identical. But more importantly, it's the rules in effect at the time you bring the matter to AAA. And in that matter, all these persons will be in the same boat. They will all be operating under the same rules at the time. Why don't each of these persons have an adequate incentive to bring their claims individually? They very well may in this particular case, but we have strong reason to conclude that is not the case for every single person, especially if you were to ask them at the time they signed these agreements in the first place. Because at that time, we recognize that the stakes are very high. Sometimes a class action is not unconscionable. However, I think the analysis has to be taken at the time these persons sign the contract. And at that time, I think reasonably, they could not have concluded the extent to which they would have been deprived of wages. And that's one of the reasons we are here. And I assume your argument before the district court on unconscionability would be that your run-of-the-mill Fair Labor Standards Act is not a big ticket item. And should be, so the class action waivers of those types of cases is unconscionable because the little guy is the one who usually has the Fair Labor Standards Act claim. That's one of our arguments, Your Honor. Absolutely. Okay. We'll hear from you on rebuttal. Thank you. Thank you, Your Honor. My name is Andrew Voss. I'm here this morning to speak on behalf of the Traverse Companies and its operating subsidiaries in the state of New Jersey. Your Honor, I also want to focus on the questions that the court raised in correspondence to the parties. First, with respect to what happened in this district court relative to unconscionability, because the district court did approach that question from a formation, that is, an arbitrability perspective. Certainly, the district court's order, because it was read into the record after oral argument, does not extensively discuss the issue as to whether the arbitration agreement that we're litigating was unconscionable. But it says it was not an adhesion. There's one line, basically. Well, Your Honor, there certainly was an argument on the issue. And what Judge Haynes said at page 822 in the transcript was, although I understand that this is a secondary argument, I do find that what we're talking about is a form of litigation of the accord which these plaintiffs seek to frame their complaints, but they don't need that vehicle to make their complaints, and a class action or a collective action is by no means a sure thing. That is, from Judge Haynes' perspective, a class action or a collective action under 216B of the Fair Labor Standards Act is simply a procedural device that the courts, by rule of procedure or by statute, afford the parties to create, to manage a particular type of dispute. If it's more efficiently managed through a class action or through a collective action, the courts, in the court's discretion, can determine that that type of mechanism can be used. So certainly from the district court's perspective, that issue did not prevent the enforcement of the contract, and it was raised in the parties' briefs. Certainly, we discussed Muhammad and Harris in the New Jersey Supreme Court at length. So I don't think that there's any need to remand this case to the district court to further... So you think that's an adequate determination as to unconscionability? Your Honor, it was raised before the court, and the court found no obstacle to enforce the parties' agreement as it was written. But the opinion really doesn't touch on a lot of the issues. I mean, the Ninth Circuit has found that class action waivers are unconscionable. I mean, it doesn't really touch on a lot of the issues. So even if we say that the court addressed it, is that a sufficient consideration of the issue? Well, Your Honor, the parties raised the issue as a barrier to enforcement of the agreement. Considering the delay, the district court was authorized to decide the question. The court found that based on general principles of contract formation under New Jersey law, there was a contract, and that the unconscionability argument that was raised by the parties was no obstacle to enforcing the agreement as set by the parties' arbitration. Would unconscionability also take into account the way in which this later waiver was inserted? With being the last sentence doesn't even mention class action, doesn't say waiver, just kind of an insidious little, oh, by the way. Wouldn't unconscionability also consider the fact that this was pretty much buried? Your Honor, certainly that was the question that was raised and argued at length before the district court. And that certainly is an issue relating to procedural unconscionability. Right, but the court didn't even allude to that. So, I mean, if you're arguing that the court dealt with it, that's fine. But I'm wondering, did the court get it right in its treatment? Your Honor, I respectfully disagree that the district court did not address that issue because we talked about it. No, and I'm saying, did it get it right? How could you get it right without considering these aspects of that waiver? Because the court analyzed the conduct of the parties. Your Honor, when you're addressing there the procedure by which the agreement is reached between parties, how is that agreement reached? What did the non-contracting party trialers, how did they communicate their intent and offer? Yeah, they said we comply with the code and we saw these, you know, we hereby agree and you click here. And you have, you know, 14 policies attached and three pages of arbitration and one little sentence. You say it's procedural, but I'm saying at some point it turns into substantive. Well, the procedure in terms of how the contract is formed, and what the New Jersey courts do to examine procedural accountability is evaluate the relationship of the parties, the communications of the parties, things that you allude to, whether it's whether there's an intent to defraud, to oppress, whether the parties can understand the communications, whether one party took advantage of the other. And what the district court found was these were sophisticated corporate employees and that these were communications that occurred over a series of years. And whenever the communications were made, and certainly they were made electronically, trialers employ almost 40,000 people. And we're trying to communicate policies that define the scope in terms of employment. Trialers, like virtually every other employer in this country, uses electronic communications as a way to effectively communicate. But shouldn't there have been, you used the word waiver, shouldn't there have been some bold, shouldn't there have been something more explicit when you're dealing with something like waiver of class action? I disagree that the class action mechanism is a substantive right. It is a procedural right that is part of our rules of procedure in federal court or in state court, and a provision in 216B that would actually intend to restrict employees' ability to proceed under Article 23. But it's possible to analyze a waiver of class action under Fair Labor Standard Act as really giving the company kind of a home run, in that it's very unlikely that an individual employee can mount an attack under Fair Labor Standard Act on their own. As a practical matter, it would limit the ability of these issues coming before the court or arbitration. Well, that's a constitutional question under the New Jersey law, and what the New Jersey Supreme Court said in looking at Muhammad and Harris to determine whether the value of the claim is such that the class action court waiver is really an exculpatory clause. Your Honor, based on the comparison of the court's conclusion in Harris and Muhammad, there's no basis to conclude that these employees who are individually seeking an excessive $250,000 apiece in overtime damages or liquidated damages were not motivated to seek remedies in the arbitral forum to which they agreed. I do want to address that waiver question because I think it's important. Now, this has been described as a waiver, but really what that provision in the arbitration agreement does is define what the parties have agreed to arbitrate, consistently so. What do the parties agree should be subject to the arbitral forum? That policy that was adopted and communicated to employees in 2007, to which the appellants expressly agreed, indicated that both sides understand and acknowledge that they will not proceed in arbitration by class action. Now, the earlier policies that were adopted in 1992 and 2004 did not expressly discuss class actions or collective actions, but what they did do is say that disagreements that may arise between an individual employee and travelers, that those types of disputes should be resolved in arbitration. So there's no reference to class action or collective action, but the arbitration agreements themselves talk about what types of disputes have the parties contractually agreed to arbitrate, and that's the key, and we're still to listen. Now, opposing counsel has referenced the rules of the AAA, but those rules expressly state that you cannot refer to the rules to determine what the parties intended to arbitrate. But in your briefing, you seem to concede that there originally was an agreement. You don't take the position that the original policies did not, that they could not have class action under the original. We certainly do not concede that they were entitled to proceed in arbitration under the earlier agreements in class action. We weren't litigating the party rights and obligations under the earlier policies. They were presented to the court, because from our perspective, the policy that was in force was a policy that was communicated to the party, to the appellants in 2007, which they agreed to, which was then subsequently communicated to them in the Code of Conduct, which they agreed to again. And so we weren't focused on the agreements that were supplanted in 2007 and agreed to in 2008. Now, if the question is asked, what did the parties agree in 2002 and 1994, you look to those agreements, and as I've indicated, those arbitration policies cover disputes between individual employees and drivers, and we cannot reference the AAA rules to determine what the parties intended to arbitrate. That's what still makes them successful. On the question of unconscionability, if you could address the arguments made with respect to procedural unconscionability and substantive unconscionability. Absolutely, Your Honor. Procedurally, the questions of New Jersey law, which this court is bound to apply consistent with Toledo, the question is, are the parties, as I've indicated, such that one party was taking advantage of the other in the form and means in which these communications occurred? Now, here we have multiple communications between corporate employees and their employer, and each time this communication occurs, the employer underscores their key obligations. This is a Code of Conduct. We expect that every employee is going to comply with these obligations, and we train on these obligations, and at the conclusion of training and at the conclusion of these communications, we ask employees to acknowledge that they have received the communication, they understand it, and they agree to it. And that, Your Honor, is how this case distinguishes itself from the ability that the New Jersey Supreme Court takes upon which plaintiffs substantially rely. Now, with respect to substantive unconscionability, that question under New Jersey law is asked, well, is this the type of obligation that a reasonable person would accept? Is it so overwhelming, is it so burdensome that no party would accept this type of obligation? And what the New Jersey Supreme Court has said is no, that's not the case. It's not per se unconscionable. Certainly, if a claim... Because these are all low-value concerns. Exactly, Your Honor. And that's where you go to Mahan and Harris to determine what would an employee, based on the face with the inability to proceed as a collective action or class action, would the employee decide it's not even worth initiating this process, it's not even worth going into the resources and beginning the employee dispute process because it's only worth $1.50. So we would decide substantive unconscionability differently if someone brings an action under Fair Labor Standards Act that is a lower-ticket item? Is it kind of as applied? No, Your Honor. It's looking at the agreement. It is reasonably anticipated that no party would proceed with a claim in arbitration because the value of the claim is such that there's a disinclination to proceed. It's more like the individual value in an individual case. Because in the Harris case, where we're talking about consumer contracts, and then because the value of the claim, as I said, is $1.50, the claim that's up at the Supreme Court is $30.50, and under those circumstances, courts in certain states have said the class action, called the waiver, is exculpatory because no party would proceed in arbitration because it's simply not worth the time. Your Honor, I can tell you, representing travelers in these arbitrations, that this mechanism, in fact, encourages employees to come forward with disputes. So there's no disincentive for employees to access this program. In fact, the opposite is true because the employer, through this program, makes the resolution of these disputes both informally and formally through an arbitral form, easily accessible and affordable. What is your argument that unconscionability should at least be tested first in the district court? Your Honor, because we did test it. Both parties argued it right. And we discussed Muhammad. We discussed Harris. The court specifically discussed from her perspective the nature of a Rule 23 mechanism and that this was simply a mechanism to pursue in court at the discretion of the district court if the court decided that it made sense for a docket management tool. Parties have no rights to pursue a class action litigation. The district court must decide, in an act of discretion, as to whether the Rule 23 obligations and requirements have been met in the individual case. We may need something further in terms of you're giving us all of the record, aspects of the record that touch on that issue before the court. But we can decide that at a later time. With respect to whether the district court specifically addressed it? Yes, whether it was presented, the extent to which it was presented, how it was argued, what the arguments were. Absolutely, Your Honor. Absolutely. What about the issue of, okay, let's say we get by unconscionability, but whether the parties actually agreed to arbitrate, goes to the arbitrator. The question of arbitrability relates to two aspects, and there's really two issues here before this court on that question. First, was there a contract? I know that's the basic elements of contract formation. We haven't discussed it at length, but from my perspective, the record is absolutely clear. The second question would be? Well, on that issue, Judge Hayden refers to, originally the argument was there was no agreement to arbitrate, but that went by the wayside. So arbitrability from the standpoint of, was there a contract? It's not really before us. Your Honor, certainly, because the defendants dispute, or the appellants dispute, that there was ever an agreement in the first place, because under liability, they argue that we didn't form an agreement. There was no modification of the parties' original policy. With respect to modification. Exactly, Your Honor. But that's on the class action piece, not we agreed to arbitrate. What's the contract? There was a communication of the arbitration agreement in 2007 that determined the scope and nature of the parties' agreement, and that's what we're here disputing. Thank you. Thank you. Thank you. Judge Harris, could you touch on the procedural constability of your counsel that it was argued front and center before the court, and that obviously this is something for courts to decide. The court did decide it, albeit perhaps cryptically at the end. Yes, Your Honor. We believe it was raised. We do not believe it was the focus of the argument or the court's ruling. It appeared from our standpoint that what the court was doing was engaging in analysis as to whether or not our plaintiffs understood the agreements. It appeared to us that the court was addressing a question that really wasn't in dispute. We were not challenging whether or not our plaintiffs received notice of these materials or that did you make arguments so that these were our hidden contract terms that don't deal with procedure now, right? We definitely addressed that matter in terms of the procedural nature of it. We believe we touched upon the substantive nature of it, and since then we believe there's been at least a little bit more clarity on substance versus procedure. Our take on Palermo is that this court is treating class actions and the agreement to waive or not waive as something a little bit more than a basic procedural question, that it's something that goes more to arbitrability, which suggests to us it goes to substance. But on substance here, you would rely on Mohammed, but Mohammed deals with consumer, small consumer value loans, and it seems like the Harris or Delta funding, whatever you want to call it, is clarifying that when you start getting into bigger numbers, what I mean is the substantive of that is really as much. We agree with that, and both cases address a consumer matter, and I think the distinction we would draw is that there's a difference between a consumer matter that a layperson is likely to understand where there's been a violation of rights versus a fair labor standards act matter or a comparable state wage matter where Mr. Voss indicated from his experience, from our experience, a lot of times they don't know that they've been deprived of rights. They realize they've been deprived of overtime. They've been told by their employer that they are salary employees, that they are being paid properly, and so it's just not the type of thing that triggers a lot of these persons' minds. We would also return to the idea of what do the employees understand at the time they were signing these documents. A lot of employees may not work for the company for very long. If they worked there for only a few days, a few weeks, their claims would not necessarily be very high, and with respect to many of the class members, we believe that's the case. The bottom line from our standpoint is that we think there is a difference between a fundamental thing such as wages versus a consumer type case, and because of that there needs to be just a little bit more scrutiny on the substantive precautionability analysis. On top of the procedural analysis, which is linked to the waiver analysis, basically what we have here is these persons are getting a test every year, some type of ethics test, and they are told after they take it, certify that you've taken this test, and that you have complied with the company's policies, which they did, and one of those policies references five other policies, one of which is the arbitration agreement, and it just seems that something as important as a class waiver should be done in a little bit more express manner than that, which is the thrust of our argument as to the procedural unconscionability. I see that my time is up, and so I thank this board for its time. All right. Thank you. If council would approach the bench for a minute, and if we turn the microphone off. Thank you.